## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, DC 20006

                        Plaintiff,

          v.

United States Central Command J6-RDF (FOIA)          Case No.:
7115 South Boundary Boulevard
MacDill Air Force Base, FL 33621-5101

                        Defendant.

## COMPLAINT FOR VIOLATION OF THE
## FREEDOM OF INFORMATION ACT

## INTRODUCTION

1.     Plaintiff Willkie Farr & Gallagher LLP represents hundreds of American military veterans and Gold Star families who were gravely injured, or whose relatives were killed or wounded by terrorist attacks in Afghanistan and are suing several large contractors with lucrative businesses in post-9/11 Afghanistan who are alleged to have helped finance the terrorist attacks by, among other things, paying the Taliban to refrain from attacking their business interests.  *See Cabrera et al v. Black & Veatch Special Projects Corporation et al,* Case No. 1:19-cv-03833-EGS (D.D.C.).  Plaintiff brings this action for relief under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to compel the United States Central Command ("the Agency" or "CENTCOM") to produce records, as required by law related to contractor payments to the Taliban.

2.     On March 2, 2020, Plaintiff properly submitted 21 targeted FOIA requests to the Agency in accordance with FOIA and applicable agency regulations.

3.     On May 1, 2020, Plaintiff properly submitted two additional targeted FOIA requests to the Agency in accordance with FOIA and applicable agency regulations.

4.     Ultimately, the Agency referred nine of Plaintiff's 23 requests to other federal agencies, but retained 14 for its own processing.

5.     The Agency's statutory deadline for making an adequate determination and response concerning each of these 14 requests has expired.  The Agency's failure to act on Plaintiff's requests violates FOIA and Department of Defense Freedom of Information Program Rules and Regulations.  5 U.S.C. §§ 552 (a)(6)(A)(i), (a)(6)(B)(i); 32 CFR § 286.9(b).

6.     More than a decade ago, the President directed federal agencies to adopt a "presumption in favor of disclosure" and respond to FOIA requests "promptly and in a spirit of cooperation," so that "openness prevails."  FOIA Pres. Mem., 74 Fed. Reg. 4683, 4683 (Jan. 21,

2009).  In failing to provide a determination or sufficient response on any of Plaintiff's requests after the deadline under FOIA, the Agency has thus far failed to comply with this directive.

7.      Plaintiff has constructively exhausted administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i), and now seeks judicial relief compelling the Agency to promptly search for and produce the requested records, and enjoining any further improper withholding.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201(a), and 2202.

9.      Venue lies in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## PARTIES

10.      Plaintiff Willkie Farr & Gallagher LLP ("Plaintiff" or "Willkie") is a law firm with an office in Washington, D.C.  Plaintiff Willkie submitted the FOIA requests identified in this Complaint.

11.      Defendant is an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1).  The Agency is believed to have possession, custody, and control of records responsive to Plaintiff's requests.

## FACTUAL ALLEGATIONS

### I.      BACKGROUND

12.      Plaintiff represents hundreds of U.S. citizens who were killed or injured, or whose relatives were killed or injured, by Taliban-led terrorist insurgents in Afghanistan between 2009 and 2017.  These victims have asserted claims in this District seeking damages under the federal Anti-Terrorism Act against several large contractors with lucrative businesses in post-9/11 Afghanistan who are alleged to have helped finance the terrorist attacks by, among other things,

paying the Taliban to refrain from attacking their business interests.  *See* Amended Complaint, *Cabrera* (Dkt. No. 82).

13.    As alleged in the *Cabrera* Amended Complaint, the U.S. government publicly opposed protection payments and attempted to stop them.  Multiple agencies, including the Defendant Agency, set up task forces designed to interrupt the flow of protection money to terrorists, and U.S. officials stated repeatedly that such payments were illegal and counterproductive.  Federal regulations also required prime contractors to ensure that their contracting practices – including the money spent downstream by their subcontractors – did not finance terrorism.

14.    Plaintiff submitted the FOIA requests at issue to obtain Agency records relevant to claims brought in *Cabrera*, including governmental records documenting and analyzing protection payments, and other corrupt acts, committed by the *Cabrera* defendants.  Additionally, the various requests seek contracts and related documents relevant to the *Cabrera* defendants' conduct in Afghanistan, which resulted in those defendants providing significant sums of U.S. taxpayer dollars to the very terrorists our country was fighting.

15.    The requested records have broader public significance beyond the *Cabrera* litigation.  National media has reported on the *Cabrera* plaintiffs' efforts to pursue legal action

against the Cabrera defendants, reflecting the public's interest in allegations that large corporations

financed terrorism in Afghanistan.[1]

## II.   PLAINTIFF PROPERLY SUBMITTED 23 FOIA REQUESTS FOR AGENCY RECORDS, 14 OF WHICH REMAIN WITH CENTCOM

### A.   Plaintiff's Submission of 23 FOIA Requests, 14 of Which Remain with CENTCOM

16.   On March 2, 2020, Plaintiff properly submitted 21 targeted requests ("March 2

Requests"), 12 of which remain with the Agency, to the Agency's FOIA e-mail address

(centcom.macdill.centcom-hq.mbx.freedom-of-information-act@mail.mil) as instructed on the

Agency's public website.   *FOIA Requester Service Center*, HEADQUARTERS UNITED

STATES CENTRAL COMMAND (USCENTCOM) (October 6, 2020, 4:39 PM),

https://www.centcom.mil/Home/FOIA/.  As discussed more fully below, the 12 remaining March

2 Requests "reasonably describe" the records Plaintiff seeks, 5 U.S.C. § 552(a)(3)(A)(i), and, to

the extent possible, specify documents, dates, and corroborating information establishing the

existence of the requested records and provides a set of specific search terms for the Agency's use

in locating responsive documents.   Additionally, the requests provide requester contact

information and a statement of a willingness to pay associated fees.  Plaintiff's e-mails conveying

the March 2 Requests are attached as **Exhibit 1**.  In order to avoid unnecessarily duplicative or

---

[1] *See, e.g.*, Jessica Donati, *Lawsuit Accusing Contractors of Paying Protection Money to Taliban is Expanded*, THE WALL STREET JOURNAL (June 8, 2020), https://www.wsj.com/articles/lawsuit-accusing-contractors-of-paying-protection-money-to-taliban-is-expanded-11591471172; Erik Larson, *Families of Afghan War Dead Say Contractors Bribed Taliban*, BLOOMBERG (Dec. 27, 2019), https://www.bloomberg.com/news/articles/2019-12-27/families-of-u-s-afghan-war-dead-say-contractors-bribed-taliban; Kevin Breuninger and Lauren Hirsch, *US contractors sued for allegedly paying 'protection money' to the Taliban in Afghanistan*, CNBC (Dec. 27, 2019), https://www.cnbc.com/2019/12/27/lawsuit-contractors-paid-protection-money-used-in-terrorist-insurgency.html; David Shortell, *Gold Star family lawsuit alleges contractors in Afghanistan funneled money to the Taliban*, CNN (Dec. 27, 2019), https://www.cnn.com/2019/12/27/politics/afghanistan-contractor-suit/index.html; Adam Shaw, *Families of Americans killed in Afghanistan sue contractors over alleged Taliban payments*, FOX NEWS (Dec. 27, 2019), https://www.foxnews.com/politics/families-of-americans-killed-in-afghanistan-sue-contractors; Michael R. Gordon and Jessica Donati, *U.S., International Contractors Sued for Allegedly Paying Protection Money to Taliban*, WALL STREET JOURNAL (Dec. 27, 2019), https://www.wsj.com/articles/u-s-international-contractors-sued-for-allegedly-paying-protection-money-to-taliban-11577468921.

irrelevant exhibits, the full set of attachments to these e-mails are not attached to Exhibit 1; instead, the 12 March 2 Requests that pertain to this litigation are attached separately.

17.    On April 1, 2020, more than 20 working days after the delivery of the aforementioned FOIAs, Plaintiff sent a letter to the Agency FOIA Office e-mail address requesting a determination of its previously submitted March 4 requests. This letter is attached in full as **Exhibit 2**.

18.    On April 14, 2020, the Agency sent an Interim Letter to Plaintiff acknowledging receipt of Plaintiff's 21 requests.  The Agency explained that the requests were being processed in accordance with Title 5 U.S.C. § 552 Freedom of Information Act and Privacy Act, and Executive Order 13526, and that processing time for these documents would depend on consultation with other U.S. Department of Defense ("DOD") components, other agencies, and the current COVID-19 pandemic.  The Agency also denied expedited processing for all of Plaintiff's requests.  The Agency stated that it placed Plaintiff's requests in a multi-track processing system based on the date of receipt and complexity of the request, and placed as #1777-1797 in the Agency's queue. The Agency's April 14, 2020 Interim Letter is attached as **Exhibit 3**.

19.    On May 1, 2020, Plaintiff Willkie properly submitted two additional targeted requests ("May 1 Requests") to the Agency in accordance with FOIA and applicable agency regulations.  As discussed more fully below, the two May 1 Requests "reasonably describe" the records Plaintiff seeks, 5 U.S.C. § 552(a)(3)(A)(i), and, to the extent possible, specify documents, dates, and corroborating information establishing the existence of the requested records, and provides a set of specific search terms for the Agency's use in locating responsive documents. Additionally, the requests provide requester contact information and a statement of a willingness to pay associated fees.  Plaintiff's e-mails conveying the May 1 Requests are attached as **Exhibit**

**4**. As before, in order to avoid unnecessarily duplicative or irrelevant exhibits, the full set of attachments to these e-mails are not attached to Exhibit 4; instead, the May 2 Requests that pertain to this litigation are attached separately.

20.     On May 6, 2020, Plaintiff received an Interim Letter from the Agency acknowledging receipt of the two May 1 Requests.  The Agency explained that the requests were being processed in accordance with Title 5 U.S.C. § 552 Freedom of Information Act and Privacy Act, and Executive Order 13526, and that processing time for these documents would depend on consultation with other DOD components, other agencies, and the current COVID-19 pandemic. The Interim letter is attached in full as **Exhibit 5.**

21.     On June 24, 2020, the Agency sent Plaintiff a Status Report confirming that the Agency had determined that 14 of Plaintiff's requests would remain in the CENTCOM queue for further processing.  This Status Report is attached as **Exhibit 6**.  The 14 requests that remain in the CENTCOM processing queue—12 of the March 2 Requests, and the two May 1 Requests— are discussed in the following paragraphs and attached in full as **Exhibits 7 – 18,** and **19 – 20**, respectively**.**  All 14 await the issuance of a determination by the Agency.

**B.     Plaintiff's 14 Requests Retained by CENTCOM**

22.     The following paragraphs describe the 14 of Plaintiff's requests that remain with CENTCOM and await the Agency's determination.

23.     **The "Afghanistan Vendor Vetting Cell Request" or "Vendor Threat Mitigation Cell Request** (**Exhibit 7**) (FOIA #20-0252) seeks all documents authored, created, or sent by U.S. Forces Afghanistan's ("USFOR-A's") Task Force 2010 (a unit established to ensure the military's contracting dollars in Afghanistan do not inadvertently fund corrupt businesses, warlords, or insurgents) regarding contracting or reconstruction projects and/or private security

companies in Afghanistan and related terrorist or insurgent finance.  On June 24, 2020, Plaintiff received a CENTCOM Status Report explaining incurred delays because of COVID-19 and the research required to respond to this request (as well as the additional March 2 Requests described in ¶¶ 24 – 36).  *See* **Exhibit 6**. On July 28, 2020, Plaintiff received an email correspondence from the Agency requesting Plaintiff to narrow the set of search terms provided in this request.  The next day, July 29, 2020, Plaintiff replied with a revised and narrowed group of terms to address the Agency's concerns, and offered to discuss the date range and/or terms should the search results prove problematic.  The Agency replied the same day confirming receipt of Plaintiff's narrowed terms as well as the Agency's plans to develop next steps internally and report back.  This correspondence is attached in full as **Exhibit 21**.

24.     **The "Charles Tiefer Request" (Exhibit 8)** (FOIA #20-0253) seeks certain records authored, created, or sent by Charles Tiefer, a commissioner of the Center on Wartime Contracting, pertaining to contracting or reconstruction projects and/or private security companies in Afghanistan and related terrorist or insurgent finance.

25.     **The "Commission on Wartime Contracting Request" (Exhibit 9)** (FOIA #20-0265) seeks documents authored, created, or sent by the Commission on Wartime Contracting regarding contracting or reconstruction projects and/or private security companies in Afghanistan and related terrorist or insurgent finance.

26.     **The "Contractor Debarment Request" (Exhibit 10)** (FOIA #20-0254) seeks documents related to contractor debarment or suspensions, including the debarments or suspensions of listed contractors and subcontractors under § 841 of the 2012 National Defense Authorization Act.

27. **The "Gert Berthold Request" (Exhibit 11)** (FOIA #20-0257) seeks emails and documents sent from or received by Gert Berthold, the person in charge of digitizing, organizing, and analyzing bank data from institutions while serving in Task Force 2010.

28. **The "Joint Chiefs Counter Threat Finance Submissions Request" (Exhibit 12)** (FOIA #20-0261) seeks annual submissions to the Chairman of the Joint Chiefs of Staff required by DOD Directive No. 5205.14, Enclosure 2, paragraph 9(e).

29. **The "Senate Report Request" (Exhibit 13)** (FOIA #20-0266) seeks specific documents identified in a Senate Contractors Report published on September 28, 2010 and identified in the request.

30. **The "Specific Documents List Request" (Exhibit 14)** (FOIA #20-0268) seeks specified lists of contracts, memorandum, files, reports, and other related documents pertaining to specific organizations and operations connected to Afghanistan during the relevant time period. In the Agency's June 24, 2020 Status Report (Ex. 6), the Agency stated that it had determined that this request should be severed into seven items. Items #1 and #2 would be referred to Office of Secretary of Defense/Join Staff (OSD/JS). Items #3, #4, and #7 would be closed because North Atlantic Treaty Organization ("NATO")—an international organization—does not meet the requirements of an Agency as defined by 5 U.S.C. § 551. However, the Agency advised that it would "continue processing information for requests #5 and #6."

31. **The "Taliban Mobile Phone Request" (Exhibit 15)** (FOIA #20-0269) seeks reports and analyses concerning the Taliban and Haqqani Network's use of mobile phone networks, including the practice of demanding that cell towers or transmission masts be shut down or that service be suspended or deactivated at night.

32.     **The "Task Force 2010 Request" (Exhibit 16)** (FOIA #20-0272) seeks documents authored, created, or sent by Task Force 2010 regarding contracting or reconstruction projects and/or private security companies and terrorist or insurgent finance.

33.     **The "Tom Creal Request" (Exhibit 17)** (FOIA #20-0271) seeks documents and emails sent to or received by Thomas Creal regarding contracting or reconstruction projects and/or private security companies and terrorist or insurgent finance.

34.     **The "USA Today FOIA Request" (Exhibit 18)** (FOIA# 20-0273) seeks (1) FOIA requests submitted by USA TODAY and Brett Murphy on or about June 20, 2018 to the DOD or any of its Components and any cover letters attached thereto; (2) emails, correspondence, and communications or administrative appeals sent by or to USA Today, Brett Murphy, or any agents responsive to item 1; and (3) records produced in response to any FOIA request in item 1.  On April 3, 2020, Plaintiff received an Interim Letter (dated March 13, 2020) for this request stating that the actual processing time for these documents would depend on consultation with other DOD components, stateside, overseas, or other agencies.  This letter is attached in full as **Exhibit 22**.

35.     **The "CENTCOM MTN PowerPoint Request" (Exhibit 19)** (FOIA #20-0763) seeks documents relating to the investigation of suspected protection payments made by mobile phone operators or providers in Afghanistan.  Additionally, this request seeks related "DEA-6" and Intelligence Information Report ("IIR") documents and reports from the Drug Enforcement Administration/Afghan Threat Finance Cell ("DEA"/"ATFC").

36.     **The "Cable Request" (Exhibit 20)** (FOIA #20-0767) seeks documents relating to meetings between United States Special Representative for Afghanistan and Pakistan ("SRAP") Special Advisor Ashley Bommer, SRAP staffer Jared Cohen, USFOR-A officials, and mobile service providers ("MSPs") to discuss placing telecommunications towers on the US Military's

Forward Operating Bases or other installations on certain dates.  It also seeks communications and proposed draft agreements related to a July 2009 meeting when a proposal was discussed in which USFOR-A would erect or host towers for telecommunications companies.

37.    To date, the Agency has failed to provide any determination or response records for Plaintiff's 14 outstanding requests as required by FOIA.  The Agency has never asserted that the requests failed to reasonably describe the records sought or was improper or deficient in any manner.  Nor has the Agency requested any additional information from Plaintiff, other than what is reflected *supra*.

III.    **THE AGENCY FAILED TO MAKE DETERMINATIONS WITHIN FOIA'S TIME LIMITS FOR ALL OF PLAINTIFF'S REQUESTS, AND PLAINTIFF HAS CONSTRUCTIVELY EXHAUSTED ITS ADMINISTRATIVE REMEDIES**

A.    **The Agency Violated FOIA's Time Limits and Search Requirements**

38.    Pursuant to 5 U.S.C. § 552(a)(3)(A), after receiving each of Plaintiff's requests, the Agency was required to search for responsive records, including making reasonable efforts to search for records in electronic format and to promptly produce the records it located.  Further, pursuant to 5 U.S.C. § 552(a)(6)(A)(i), the Agency was required to make a determination within 20 working days of receiving each FOIA request, unless within the 20-day period, pursuant to § 552(a)(6)(B)(i), the Agency provided Plaintiff written notice that the Agency had determined that "unusual circumstances" apply and was thereby seeking an extension of no more than 10 working days.  5 U.S.C. §§ 552 (a)(6)(A)(i), (a)(6)(B)(i); *see also* 32 CFR § 286.8(c).  Given that the last of Plaintiff's 14 remaining requests was submitted on May 1, 2020, the Agency has violated the 20- or 30-working-day deadline to provide a determination for each of the Plaintiff's 14 requests as required by FOIA.

39.    The Agency has also failed to provide responsive records or make determinations regarding these 14 requests.

40.     The Agency's failure to make determinations concerning Plaintiff's requests within the required time period violates 5 U.S.C. §§ 552(a)(6)(A)(i) and (B)(i), as well as the Agency's own FOIA regulations.  *See* 32 CFR § 286.7(a).

**B.     Plaintiff Has Constructively Exhausted Administrative Remedies**

41.     For each of the foregoing requests (or aspects thereof), the Agency has not stated which documents will be produced or withheld, provided reasons for any withholding, or informed Plaintiff of appellate rights.  The Agency thus has not made a determination as required by FOIA.

42.     As stated above, the 20- or 30-working-day time limit for a determination has expired for each request at issue, and Plaintiff is therefore "deemed to have exhausted administrative remedies" with respect to the foregoing FOIA violations.   5 U.S.C. § 552(a)(6)(C)(i).   FOIA thus authorizes Plaintiff to bring suit in this District to compel prompt production and enjoin continued wrongful withholding of records responsive to Plaintiff's requests.  5 U.S.C. § 552(a)(4)(B).

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT ONE:  Failure to Comply with FOIA**</u>

43.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44.     Plaintiff properly requested records within the possession, custody, and control of the Agency.

45.     CENTCOM is an agency subject to FOIA.

46.     The Agency was required under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to Plaintiff's FOIA requests.

47.     The time under 5 U.S.C. § 552(a)(6) for the Agency to conduct such a search and make a determination as to each of Plaintiff's 14 abovementioned FOIA requests, informing Plaintiff which documents the Agency intends to produce and withhold, and the reasons for withholding any documents, has expired.

48.     The Agency has wrongfully failed to make and communicate to Plaintiff a determination as to each of Plaintiff's 14 FOIA requests.

49.     Pursuant to 5 U.S.C. § 552(a)(3)(A), the Agency was required to promptly produce *all* responsive records that are subject to disclosure under FOIA.

50.     The Agency has wrongfully failed to make such a production as to any of Plaintiff's 14 FOIA requests.

51.     Plaintiff has exhausted administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

52.     Plaintiff is entitled to an order compelling the Agency to conduct reasonable searches sufficient to locate responsive records and to expeditiously produce all responsive records, subject to withholdings agreed to by the parties or approved by the Court.

53.     To facilitate determination of the validity of any withholdings based on FOIA exemptions the Agency may ultimately assert, Plaintiff seeks an order compelling the Agency to produce indexes justifying redactions to or withholding of responsive records.

## COUNT TWO:  Declaration Precluding Assessment of Fees

54.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     The Agency has failed to comply with time limits under 5 U.S.C. § 552(a)(6).

56.     Other than described *supra*, the Agency has not discussed or attempted to discuss with Plaintiff how or whether Plaintiff is required to limit the scope of any of Plaintiff's FOIA requests.

57.     No court has determined that exceptional circumstances exist.

58.     Accordingly, Plaintiff is entitled to a declaration that the agency may not assess any search fees associated with any of Plaintiff's FOIA requests, pursuant to 5 U.S.C. § 552(a)(4)(A)(viii) and 28 U.S.C. § 2201(a).

## **PRAYER FOR RELIEF**

59.     Plaintiff requests that the Court:

a.  Order the Agency to expeditiously conduct a reasonable search for all records responsive to Plaintiff's 14 FOIA requests, to the extent such a search has not already been conducted, and to demonstrate that it employed search methods reasonably likely to lead to the discovery of responsive records;

b.  Order the Agency to produce within twenty (20) days or such other time as the Court deems proper all records responsive to Plaintiff's 14 FOIA requests that are subject to disclosure under FOIA, as agreed to by the parties or determined by the Court, and indexes justifying any withholdings or redactions;

c.  Declare that the Agency failed to comply with the time limits under 5 U.S.C. § 552(a)(6) and that search fees therefore may not be assessed under 5 U.S.C. § 552(a)(4)(A)(viii) with respect to any of Plaintiff's FOIA requests;

d.  Award Plaintiff attorney's fees and costs incurred in relation to this case, pursuant to 5 U.S.C. § 552(a)(4)(E); and

e.  Grant Plaintiff any other relief the Court deems just and proper.

Dated:  November 12, 2020

Respectfully submitted,

*/s/ Randall Jackson*
Randall Jackson (D.C. BAR No. 490798)
Nicholas Reddick (D.C. BAR No. 1670683)
Devin Charles Ringger (D.C. BAR No. 1044160)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Tel: (202) 303-1000
Fax: (202) 303-2000
RJackson@willkie.com
NReddick@willkie.com
DRingger@willkie.com

*Counsel for Plaintiff*